FILED

United States District Court
Northern District of Alabama
Southern Division

03 JUL 24 PM 1:49

U.S. DISTRICT COURT
N.D. OF ALABAMA

Kristen McCray,                    ]
                                   ]
    Plaintiff(s),              ]
                                   ]
    vs.                        ]     CV-02-CO-0459-S
                                   ]
City of Birmingham, Alabama,       ]
Lieutenant Joseph Rucker,          ]
Captain Ben H. King and            ]
Chief William Coppage,             ]
                                   ]     **ENTERED**
    Defendant(s).              ]
                                         JUL 2 4 2003

Memorandum of Opinion

I.    Introduction.

    The court has for its consideration Defendants' motion for summary judgment, filed February 18, 2003 (Doc. #21). Plaintiff Kristen McCray has filed suit alleging violations of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. The jurisdiction of the court is invoked to secure protection of and to redress deprivation of rights secured by the First and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. §§ 1981, 1983 and 2000(e) *et seq.*, as amended by the Civil Rights Act of 1991, providing for injunctive and other relief against race discrimination and retaliation. The issues have been briefed and upon due consideration of the relevant cases and statutes, the court finds that the motion is due to be GRANTED on all counts.

39

II.  Facts.

Plaintiff Kristen McCray ("McCray")is a white female who on or about August 1998 began working for the City of Birmingham as a Correctional Officer ("CO") at the City Jail. W.M. Coppage ("Coppage") is the city's Chief of Police and the City Jail is a division of the City of Birmingham's Police Department. Ben King ("King") is the Police Captain. The Commander of the Jail is Lieutenant Joseph Rucker ("Rucker"). Sergeant Janice Bayles ("Bayles"), Sergeant Madeline Franklin ("Franklin"), Sergeant William Gragg ("Gragg"), Sergeant Tribble ("Tribble"), and Sergeant Geraldine Wilson ("Wilson") were also jail supervisors. McCray files this suit to redress several incidents which occurred over the course of her employment. She was fired from the Birmingham Jail in the fall of 2001 for insubordination and her refusal to submit to a random drug test. Her termination is not the subject of this lawsuit.

A.  Failure to Transfer Due to Inmate Misconduct.

In November 2000 CO McCray filed a report that a male inmate was masturbating in his jail cell during a late night cell-check. The inmate's conduct was investigated by an inmate disciplinary committee composed of Rucker, Bayles, Tribble, and Wilson. Then the committee issued a disciplinary counseling to the inmate. The plaintiff thought the action was insufficient to address the problem because she had previously informed Wilson of other

problems associated with the inmate. In December 2000 she filed a grievance to protest the way the inmate was disciplined. (Doc. #23, Exh. 5). McCray contends that other African-American females, namely CO Barmore and a CO Brown were granted reassignments when they complained of similar instances of inmate abuse. (Doc. #27, Exh. 1).

B.   Racially Hostile Work Environment.

During the course of her employment, the plaintiff contends that she was subjected to numerous incidents of harassment. Sometime in early 2000, she was informed that her co-workers were making racist comments in reference to her family, calling her children "zebras" and "half-breeds" because their father (plaintiff's husband) was African-American. (Doc. #27, Exh. 1). Plaintiff informed Bayles, Wilson, and Rucker, but Rucker dismissed her complaints stating that the most he could do would be to write the co-workers up for gossiping. McCray lists other incidents which she maintains demonstrate Rucker's general attitude towards racism. For example, Rucker told another CO that he "hated white people" and McCray witnessed Rucker slam a white inmate into a wall and use mace while the inmate was handcuffed. Likewise, McCray also contends that racism played a role when King and Rucker denied her a hardship transfer for family reasons because she did not have a year on the job and was still on probation, but other African-American COs were allowed transfers despite limited time on the

job. (Doc. #27, Exh. 1). McCray subsequently filed a grievance when she learned that CO Bonner and CO Goodwin were granted shift changes even though they also had less than a year on the job and were still on probation. (Doc. #27, Exh. 1).

On or about June 7, 2001, the plaintiff filed a formal complaint against Rucker regarding his harassing conduct. (Doc. #23, Exh. 12). The plaintiff requested that the complaint be investigated by someone outside of the Police Department (as required by the Rules). Around June 20, 2001 she met with King who informed her that he would be handling the complaint. On June 21, 2001 King sent her a memorandum stating that her complaint was not valid and did not constitute harassment. McCray then filed additional grievances because she believed King's involvement violated Police Department Rules. Later Coppage informed McCray that the rules did permit King's investigation.

C.    Altercation with CO Hill.

On August 23, 2001, McCray met with Hill, Gragg and Franklin because McCray said she could not work with Hill because she was a liar (McCray states that it was Hill who told her that Rucker hated white persons). At the meeting Hill denied that she heard Rucker make the statement and that she told McCray about the statements. McCray then called Hill a "liar" and Hill responded that "[McCray's] momma [was] a bald face liar." (Doc. #23, Exh. 22). Hill then stated she would "beat [McCray's] ass" and approached McCray in a

threatening manner (Doc. #23, Exh. 22). Neither complied with orders to sit quietly and act professionally. On August 29, 2001, Hill and the plaintiff were called to separate meetings with Rucker, Gragg, and Franklin to determine if Hill and McCray could work the same shift with each other. McCray said that she was afraid to work with Hill and that she believed she would assault her. (Doc. #27, Exh. 1). As a result of the altercation, the plaintiff received a two-day suspension without pay, no overtime for thirty days and was required to complete an anger management class (Doc. #27, Exh. 13). Hill received the same discipline which surprised McCray because Hill was previously disciplined for similar misconduct.

After the meeting McCray's shift was temporarily changed from the 3:00 p.m. to 11:00 p.m. to the 11:00 p.m. to 7:00 a.m. shift. McCray was inconvenienced by the shift change because her husband worked the same shift and they had two young children at home who were left without a babysitter. McCray contends that her supervisors were aware of this problem. (Doc. #27, Exh. 1). McCray states that as a result of the transfer, she missed two scheduled days of work, resulting in a loss of income. (Doc. #27, Exh. 11).

III. Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  *Id*. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, he

may not merely rest on his pleadings.  *Id.* at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The substantive law will identify which facts are material and which are irrelevant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.  His guide is the same standard necessary to direct a verdict:  "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 746 n.11 (1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict).

However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

IV. Discussion.

The plaintiff has brought claims under several portions of the Civil Rights Act. The plaintiff alleged that she was discriminated against by means of a hostile work environment, disparate

discipline and retaliation.  The court will address each claim in turn.

A.   Hostile Work Environment.

McCray is a white female who was employed by the City as a CO. She claims she was subjected to a hostile work environment because she is white. 42 U.S.C. § 2000(e), *et seq*. She claims her work environment was racially hostile because Rucker made comments that he hated whites, inmates and co-workers referred to her children as "zebras," and because her complaints of harassment were treated less seriously.

Title VII protects persons from working environments which are heavily polluted with discrimination, ridicule, and insult, that is sufficiently severe and pervasive so as to alter the terms and conditions of her employment and create an abusive working environment.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67-68 (1986). A prospective plaintiff must also prove that respondeat superior exists.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 802-03 (1998).

It is undisputed that the plaintiff was a member of a protected group.  The claimant fails to prove, however, that she was subjected to severe and pervasive harassment.  This requirement prevents Title VII from "expanding into a general civility code." *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 81 (1988).

In determining whether a plaintiff has met the burden of alleging severe and pervasive harassment, the Supreme Court has recently reaffirmed "that the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Id*. at 81 (quoting *Harris*, 510 U.S. at 23); *Mendoza v. Borden*, Inc., 195 F.3d 1238, 1258 (11th Cir. 1999); *see also* 290 Employment Discrimination Law (C. Geoffrey Weirich, ed., 2002 Supplement) (noting that "insolated and isolated" incidents were insufficient to establish severe and pervasive harassment). Factors to consider when evaluating the conduct are the frequency and severity of the conduct, whether it is physically threatening or humiliating, and to what degree it reasonably interferes with the plaintiff's job performance. *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997) (citing *Harris*, 510 U.S. at 23). The courts must examine the conduct in context and determine whether, under the totality of the circumstances, the alleged conduct creates a hostile or abusive work environment. *Mendoza*, 195 F.3d at 1246. The standard thus "take[s] a middle path between making actionable any merely offensive conduct and requiring tangible psychological injury before the conduct is actionable." *Ngeunjuntr v. Metropolitan Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998). As proven by the numerous hostile environment cases, the "severe and pervasive test" is not a mathematical inquiry. *Richardson v. New York State Dep't*

*of Correctional Service*, 180 F.3d 426, 439 (2nd Cir. 1999). Nevertheless, the conduct should generally amount to "repeated incidents of verbal harassment that continue despite the employee's objections." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002) (quoting *Shanoff v. Illinois Dep't of Human Servs.*, 258 F.3d 696, 704 (7th Cir. 2001).

The plaintiff fails to establish that her workplace was "permeated with 'intimidation, ridicule, and insult.'" *Harris*, 510 U.S. at 23. She stated that the inmates and other corrections officers referred to her children as "zebras" and "half-breeds" due to her interracial marriage. McCray also cites CO Hill's alleged statement that Rucker "hated white people." She felt physically threatened when Rucker used unnecessarily harsh force with a white inmate and when CO Hill threatened her during the meeting. The court will address each claim in turn.

Regarding the physical threats, the court finds that Rucker's treatment of the inmate along with Hill's outburst fail to establish a sufficient nexus between the complained of harassment and the protected status of the plaintiff. *See e.g.*, *v. Booker T. Washington Broadcasting* Serv., 234 F.3d 501, 507 (11th Cir. 2000); *Palesch v. Missouri Commission on Human Rights*, 233 F.3d 560, 566 (8th Cir. 2000) (dismissing case on summary judgment absent a nexus between the protected characteristic and the alleged harassment). McCray works in a prison, and viewed in that context, the court

finds nothing extraordinary about the isolated allegation of harsh treatment towards a white inmate.

Moreover, the outburst from Hill appears to be a personality conflict between two co-workers rather than an incident involving racial animus. *See e.g. Shabat v. Blue Cross Blue Shield of Rochester*, 925 F. Supp. 977, 983 (W.D.N.Y. 1996) (noting that "in any workplace, friction will sometimes occur, and people may lose their tempers or display some hostility toward their coworkers ... [n]ot every such occurrence can be attributed to unlawful discrimination").

The alleged statements of "zebras" or "hating white people" also fail to meet the severe and pervasive test. The parties dispute whether the statements are hearsay that can be reduced to admissible evidence, but the court finds that even if they could, the conduct would still not meet the requirements. Rucker allegedly stated that he "hated white people" to other employees of the city jail. The plaintiff correctly notes that to state a hostile environment claim the comments do not have to be directly addressed to the plaintiff. *See, e.g. Walker v. Ford Motor Co.*, 684 F.2d 1355, 1359 n.2 (11th Cir. 1982)) ("The fact that many of the epithets were not directed at [the plaintiff] is not determinative. The offensive language was used in his presence."). Nevertheless, according to her affidavit, the incident was limited to one occurrence. (Doc. #27, Exh. 1).   An isolated incident may be

sufficient to survive summary judgment, but if there is only one incident it must cross a certain threshold of severity. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998); *Miller*, 277 F.3d at 1276 (noting the frequency requirement). This incident is not sufficiently severe to overcome that barrier.

Next the court addresses the statements by inmates and co-workers regarding the plaintiff's children. The court notes that to some degree, claims for a hostile environment must be considered in the context of the workplace. *See Breda v. Wolf Camera, Inc.*, 148 F. Supp. 2d 1371, 1379 (S.D. Ga. 2001). Here, the plaintiff works in a jail, and it is reasonable to expect that inmates will not follow the highest standards of decorum. Logically, the court cannot see how the statements amounted to severe and pervasive harassment. The co-worker statements are slightly different but still do not meet the standard. Although the co-worker statements appear to be more than isolated incidents, they do not approach the "continuous barrage" of harassment which can prevent the entry of summary judgment. *See. e.g. Johnson* at 509 (quoting *Dees v. Johnson Controls World Servs., Inc.*, 168 F.3d 417, 418 (11th Cir. 1999)).

In conclusion, the court finds that the plaintiff has failed to meet her burden of proving that the harassment she experienced at the Birmingham City Jail was severe and pervasive. Accordingly,

the court grants the defendants' motion for summary judgment on the issue.

B.   Disparate Treatment.

The plaintiff brings two disparate treatment claims: (1) failure to transfer in November of 2000 and (2) discriminatory discipline in August of 2001. As the plaintiff has presented no direct evidence of discrimination, the court will apply the tripartite framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973). When the plaintiff brings Title VII claims with claims under sections 1981 and 1983, the claims merge and, because the elements are identical, then the court's references to Title VII under the discussion of the disparate treatment theory encompass the 1981 and 1983 claims as well. *See Nash v. Consolidated City of Jacksonville, Duvall County, Florida*, 895 F. Supp. 1536, 1554 (M.D. Fla. 1995) (citing *Parr v. Woodmen of the World Life Ins. Co.* 791 F. 2d 888, 892 (11th Cir. 1986)).

If McCray is to prevail on her disparate treatment claims, she must submit some proof of her employer's discriminatory motive, that is, some causal link between her race and the actions of which she complains. *See Chapman v. AI Transport*, 229 F.3d 1012 (11th Cir. 2000). In a Title VII case such as this, where the plaintiff relies solely upon circumstantial evidence, the plaintiff has the initial burden of establishing a prima facie case of discrimination.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-254 & n. 6 (1980). "Demonstrating a prima facie case is not onerous, it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Lathem v. Department of Children & Youth Servs.*, 172 F.3d 786, 792 (11th Cir. 1999). Once the plaintiff establishes a prima facie case, the burden of production then shifts to the employer to articulate a "legitimate nondiscriminatory reason" for the alleged discriminatory employment action. *Lathem v. Dep't of Children and Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1993). "To satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Chapman v. AI Transport.*, 229 F.3d 1012,1024 (11th Cir. 2000)(quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981)).

After the employer presents a legitimate nondiscriminatory reason for its action, the presumption of discrimination is eliminated leaving the elements of the prima facie case. *Id*. at 1024-25. The plaintiff must then prove by a preponderance of the evidence that the reason offered by the employer was not the true reason for the employment decision, but rather a mere pretext for discrimination. *Id*. The plaintiff may meet this burden by persuading

the fact-finder either directly that a discriminatory reason more than likely motivated the employer, or indirectly that the employer's proffered explanation is unworthy of belief. *Id.* If the plaintiff succeeds in meeting this burden, the disbelief of the defendant's proffered reasons, together with the prima facie case, is sufficient circumstantial evidence to support a finding of discrimination and preclude summary judgment. *Id.* at 1025.

      1.   Transfer.

To establish job discrimination in transfers and assignments, a plaintiff must meet a burden similar to the one required for showing discrimination in promotions.  "First, a plaintiff must make a prima facie case of discrimination by showing that he was treated differently than were similarly situated black officers with respect to transfers and assignments." *Alexander v. Fulton County, GA*, 207 F.3d 1303, 1345 (11th Cir. 2000) (citing *Baldwin v. Birmingham Bd. of Educ.*, 648 F.2d 950, 955 (5th Cir. 1981). In this case the plaintiff has offered proof in the form of an affidavit that other African-American COs received transfers when they complained of inmate abuse, specifically she listed COs Barmore and Brown.[1] (Doc. #27, Exh. 1, ¶¶ 37-38).

The court strongly questions whether this evidence is sufficient to meet the plaintiff's burden of stating a prima facie

---

[1] The defendants provided additional evidence in their supplemental briefs, however the plaintiff moved to strike the additional evidence and the court granted that motion. (Doc. #36).

case.  Assuming arguendo the plaintiff has met her burden, the plaintiff concedes the defendants have met their burden by articulating a legitimate nondiscriminatory reason for not disciplining the inmate more harshly.  The burden now shifts to the plaintiff to prove by a preponderance of the evidence that this reason is pretextual. The plaintiff attempts to prove pretext by arguing that similarly situated employees were treated differently. Notably, "[d]isparate treatment exists when similarly situated workers are treated differently even though they have committed similar acts." *Osram Sylvania, Inc. v. Teamsters Local Union 528*, 87 F.3d 1261, 1265 (11th Cir. 1996); *see also Olmstead v. Zimring*, 527 U.S. 581, 613 (1999).  Generally, to be similarly situated, the individual with whom a Title VII plaintiff attempts to compare herself must be similarly situated in all material respects.  As one court has stated:

> Courts have found that to be "similarly situated," the individuals with whom the plaintiff seeks to compare himself must have: (1) dealt with the same supervisor, (2) been subject to the same standards, (3) and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."

*Sanguinetti v. United Parcel Service*, 114 F. Supp. 2d 1313, 1317 (S.D. Fla. 2000) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *see also Malladi v. Brown*, 987 F. Supp. 893, 909 (M.D. Ala. 1997); *Lynn v. Deaconess Medical-Center-West*, 160 F.3d

484 (8th Cir. 1998) ("To show that employees are similarly situated, a plaintiff need only establish that he or she was treated differently than other employees whose violations were of 'comparable seriousness.'"). Likewise, "[i]t is undisputed that a nonmovant may not rely on mere allegations to avoid entry of summary judgment." *Vincent v. Wells Fargo Guard Services, Inc.*, 3 F. Supp. 2d 1405, 1415 (S.D. Fla. 1988) (citing *Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996). "An individual plaintiff must point to some specific instance of discrimination in order to be entitled to a remedy. *Id.* at 1417 (citing *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1131 (11th Cir. 1984).

Generally, the question of whether the employees are in fact similarly situated is a question of fact; however, there must be some basis for making a reasonable inference. *Brown v. Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988). The plaintiff's assertion that the others were similarly situated is simply not sufficient to carry her burden. She has provided no information about whether COs Barmore and Brown dealt with the same supervisor, were subject to the same standards or whether there were different or mitigating circumstances. *Sanguinetti*, 114 F. Supp. 2d at 1317. Her allegations that they were similarly situated, without more, is not enough to avoid summary judgment.

2.   Differences in Discipline

As a result of the plaintiff's altercation with CO Hill, the plaintiff was disciplined according to the following terms: (1) no scheduled overtime for 30 days; (2) 2 days of Granted Leave Without Pay; and (3) attendance at an anger management class.  Hill also received the same discipline.  The plaintiff brings this claim under the same framework addressed *supra* and attempts to prove pretext on the grounds that similarly situated individuals were treated differently.

In this case the plaintiff argues that Hill's actions as the "aggressor" were more egregious than McCray's and also contends that because this was Hill's second offense, she deserved harsher discipline.  She states that "on at least five separate occasions where there were similar incidents between officers, either the aggressor was forced to change shifts or no one was moved." (Doc. #27, Exh. 1, ¶¶ 30-31.  As with the previous section, the court is dubious as to whether the plaintiff has garnered enough evidence to establish a prima facie case; nevertheless, the defendants have met their burden by stating that from the events it determined that the parties were equally guilty.  As explained *supra* the plaintiff has not carried her burden and proven that this legitimate, nondiscriminatory reason is a pretext for discrimination.  Aside from conclusory statements that other parties were treated differently, the plaintiff failed to provide sufficient evidence to

create a triable issue of fact regarding the employer's discriminatory motive.

C. Retaliation.

The plaintiff maintains that she was illegally retaliated against when her shift was changed after a verbal altercation with Hill, an African-American employee.[2] A plaintiff alleging a retaliation claim under Title VII must begin by establishing a prima facie case; the plaintiff must show (1) that she engaged in statutorily protected activity, (2) that an adverse employment action occurred, and (3) that the adverse action was casually related to the plaintiff's protected activities. *Coutu v. Martin County Bd. of County Commissioners*, 47 F.3d 1068, 1074 (11th Cir. 1995). In this case the plaintiff has failed to prove that her change in shift was an adverse employment action and thus has failed to state a prima facie case. Whether an action is adverse is decided on a case-by-case basis. *Gupta v. Florida Bd. of Regents*, 212 F.3d 571 (11th Cir. 2000). To establish an adverse employment action, "an employee must show a *serious and material* change in the terms, conditions, or privileges of employment. ... the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances. *Id.*;

---

[2] The plaintiff's complaint appears to state a retaliation claim when she was denied a hardship transfer. (Complaint ¶10). She has not raised the issue in any later submissions and the court assumes that she is not further pursuing this claim.

*see also Tarrance v. Montgomery Cty. Bd. of Educ.*, 157 F. Supp. 2d 1261, 1266 (M.D. Ala. 2001) (plaintiff not subjected to adverse employment action when he was switched from one type of manual labor to another); *Bell v. Eufaula City Bd. of Educ.*, 995 F. Supp. 1377, 1385-86 (M.D. Ala. 1998) (transferring teacher from eighth grade class to seventh grade class not an adverse employment action, even though it required the teacher to review new books, create new lesson plans, engage in new preparation, and leave a subject he loved teaching); *Merriweather v. Alabama Dep't of Public Safety*, 17 F. Supp. 2d 1260, 1276 (M.D. Ala. 1998) (denying plaintiff employed in defendant's main office a position in the outlying county offices not an adverse employment action, even though it would have involved less work); *Smith v. Alabama Dep't of Pub. Safety*, 64 F. Supp. 2d 1215, 1222 (M.D. Ala. 1999) (transfer of state trooper from one city to another city did not constitute an adverse employment action, even though it caused trooper a longer commute to work, emotional problems, and great embarrassment for being transferred without a promotion). As one court summarized, "[w]hile not everything that makes an employee unhappy is an actionable adverse action, conduct that alters an employee's compensation, terms, conditions or privileges of employment does constitute adverse action.'" *Shannon v. Bellsouth Telecommunications, Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (quoting *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1118 (11th Cir. 2001)).

Although McCray has addressed many reasons why *she* viewed the transfer as adverse, she has not proven that an objective person in her situation would view the change in shifts as a serious and material change.  While she maintains the shift change caused her personal inconvenience, she does not prove that the transfer itself resulted in a loss of pay, prestige or benefits. *Id*. Merely taking time off to meet her outside responsibilities does not meet the adverse employment action threshold.

In conclusion, the court finds that the defendant's motion for summary judgment for McCray's retaliation claim is due to be granted because the plaintiff has failed to prove that the shift transfer amounted to an adverse employment action.

V.   Conclusion.

The court will enter an appropriate order in conformity with this memorandum of opinion.

.

Done, this ___24th___ of  July, 2003.

_____
             L. Scott Coogler
         United States District Judge